IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

STATE FARM FIRE AND
CASUALTY COMPANY,

Civ. No. 6:19-cv-01100-AA

            Plaintiff and
            Counterclaim Defendant,

**OPINION & ORDER**

    v.

CRAIG JENSEN; MARK A. FALBY;
WELLS FARGO BANK NA #708,

            Defendants,

    and

MARK A. FALBY,

            Counterclaim Plaintiff.

_____

AIKEN, District Judge.

On April 15, 2020, the parties submitted a Voluntary Notice of Dismissal, ECF No. 48, whereby Plaintiff State Farm Fire and Casualty Company ("State Farm") agreed to dismiss all claims against Defendants Craig Jensen, Mark A. Falby, and Wells Fargo Bank NA #708 without prejudice, leaving only Falby's counterclaim against State Farm. This case comes before the Court on a Motion for Summary Judgment filed by Counterclaim Defendant State Farm, ECF No. 62, and on a Motion

for Partial Summary Judgment filed by Counterclaim Plaintiff Falby.  ECF No. 64.
The Court concludes that this motion is proper for resolution without oral argument.

For the reason set forth below, State Farm's Motion for Summary Judgment is
GRANTED.  Falby's Motion for Partial Summary Judgment is GRANTED as to the
issue of attorney fees but otherwise DENIED.

## LEGAL STANDARD

### I.     Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to
interrogatories, affidavits, and admissions on file, if any, show "that there is no
genuine dispute as to any material fact and the [moving party] is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a).  Substantive law on an issue
determines the materiality of a fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors
Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Whether the evidence is such that a
reasonable jury could return a verdict for the nonmoving party determines the
authenticity of the dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986).

The moving party has the burden of establishing the absence of a genuine
issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the
moving party shows the absence of a genuine issue of material fact, the nonmoving
party must go beyond the pleadings and identify facts which show a genuine issue
for trial.  *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## II.    Interpretation of Insurance Contracts

"Interpretation of an insurance policy is a question of law, and our task is to ascertain the intention of the parties to the insurance policy." *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 649 (2006) (citing *Hoffman Const. Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (1992)). The court "determine[s] the intention of the parties based of the terms and conditions of the insurance policy." *Id.* at 649-50 (citations omitted). "If the policy does not define the phrase in question, [the court resorts] to various aids of interpretation to discern the parties' intended meaning." *Id.* at 650 (internal quotation marks and citation omitted). Under that framework, courts first consider whether the phrase in question has a plain meaning. *Id.* "If the phrase in question has more than one plausible interpretation," courts will then "examine the phrase in light of the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole." *Id.* (internal quotation marks and citations omitted). "If the ambiguity remains after the court has engaged in those analytical exercises, then any reasonable doubt as to the intended meaning of such [a] term[ ] will be resolved against the insurance company." *Id.* (internal quotation marks and citation omitted). However, a "term is

ambiguous . . . *only* if two or more plausible interpretations of that term withstand scrutiny." *Hoffman*, 313 Or. at 470.

## BACKGROUND

Mark A. Falby and Craig Jensen were co-owners of a residence located at 13188 Donald Rd. NE in Aurora, Oregon (the "Residence,"). Falby Ans. ¶ 12. ECF No. 18. Falby and Jensen purchased the Residence in August 2010 "not as tenants in common, but with rights of survivorship." Reiner Decl. Ex. 23. ECF No. 63. Falby married Jensen in November 2016. Falby Decl. ¶ 3. ECF No. 65.

I.     **The Policy**

State Farm issued homeowner's insurance policy, Policy No. 37-BK-G527-1 (the "Policy"), for the period of October 8, 2017 to October 8, 2018. Reiner Decl. Ex. 1. The Policy covered the Residence and its contents against loss due to fire and other insured perils and was in force at all relevant times. Reiner Decl. ¶ 2. Falby and Jensen were the named insured under the Policy. The Policy provided coverage for loss and damage to the Residence (Coverage A), the contents (Coverage B), and the loss of use benefits (Coverage C).[1] For Coverage A, the Policy provides coverage for loss of the structure:

> **1.     A1—Replacement     Cost     Loss     Settlement—Similar Construction.**
>
> a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I— COVERAGES, COVERAGE A—DWELLING,** except for wood fences, subject to the following:

---

[1] The parties agree that State Farm has paid the living expenses required under Coverage C of the Policy.

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; . . .

Reiner Decl. Ex. 1, at 15.

For Coverage B, the Policy similarly provides that State Farm will provide coverage for losses of personal property:

**1. B1—Limited Replacement Cost Loss Settlement.**

a. We will pay the cost to repair or replace property covered under **SECTION I—COVERAGES, COVERAGE B—PERSONAL PROPERTY**, except for property listed in item b below, subject to the following:

(1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

(2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less deprecation. . .

Reiner Decl. Ex. 1, at 6.

The Policy also provides that the insured have an enumerated list of duties after a loss:

> 2. **Your Duties After Loss.**  After a loss to which this insurance may apply, you shall see that the following duties are performed:
>
> a. give immediate notice to us or our agent . . .
>
> \*        \*        \*
>
> c. prepare an inventory of damaged or stolen personal property.  Show in detail the quality, description, age, replacement cost and amount of loss.  Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;
>
> d. as often as we reasonably require:
>
> \*        \*        \*
>
> (3) submit to and subscribe, while not in the presence of any other **insured**:
>
> (a) statements; and
>
> (b) examination under oath; . . .
>
> \*        \*        \*
>
> e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief: . . .
>
> \*        \*        \*
>
> (6) an inventory of damaged or stolen personal property described in 2.c; . . .

Reiner Decl. Ex. 1, at 17-18.

## II.    The Loss Event

Falby became estranged from Jensen and, on July 12, 2018, Falby sought and received a restraining order against Jensen in Marion County Circuit Court.  Falby Decl. ¶ 4.  The terms of the restraining order left Falby in possession of the Residence and Jensen was permitted to remove his personal property and belongings from the Residence.  *Id.*

On August 1, 2018, Jensen set fire to the Residence, causing extensive damage to the Residence. Falby Decl. ¶ 5. When Falby went to stay with a friend after the fire, Jensen set fire Falby's friend's residence, burning it nearly to the ground. *Id.* On August 2, 2018, Jensen returned to the Residence and set it on fire a second time, burning it completely. *Id.*

Jensen was arrested on August 2, 2018. Falby Decl. ¶ 6. On August 9, 2018, Jensen was indicted for first degree arson and first-degree burglary in the Polk County Circuit Court. Reiner Decl. Ex. 2. On October 26, 2018, Jensen was charged attempted murder, attempt to commit Class A felony, and first-degree arson in Marion County Circuit Court. Falby Decl. ¶ 7.

Falby reported the fires and the loss to State Farm on August 1, 2018 and sought benefits under Coverage A, B, and C of the Policy. Falby Decl. ¶ 2. State Farm commenced an investigation into Falby's claim on August 14, 2018. Trucco Decl. ¶ 2. ECF No. 71. State Farm's claims adjustor attempted to interview Jensen about the fire on August 15, 2018. *Id.* at ¶ 3. Jensen denied involvement in the fires and then terminated the interview on the advice of his criminal defense attorney. *Id.*

As a condition precedent to coverage, the Policy required that the insured submit to an examination under oath ("EUO"). Reiner Decl. Ex. 1, at 17. Jensen, acting on the advice of his attorney, refused to participate in an EUO until his criminal charges were resolved. Reiner Decl. ¶ 4.

On June 24, 2019, State Farm denied Falby's claim, citing Jensen's failure to submit to an EUO. Reiner Decl. Ex. 4. State Farm also denied Jensen's claim

separately. Reiner Decl. Ex. 5. State Farm also reserved its right to deny coverage intentional acts. Reiner Decl. Ex. 4, at 2.

During the pendency of State Farm's investigation and continuing for a total of twenty-four months, State Farm paid Falby's claim for loss of use and additional living expenses ("ALE") under Coverage C of the Policy. Reiner Decl. ¶ 29.

On July 17, 2019, State Farm filed this action seeking declaratory relief to resolve its obligations to Falby, Jensen, and Wells Fargo, which held the mortgage for the Residence. ECF No. 1.

On August 13, 2019, Falby filed an Answer and Counterclaim against State Farm, seeking the following under the Policy: (1) Loss of the Residence structures up to $550,000; (2) loss of personal property not to exceed $400,000; (3) ALE benefits up to $5,000 per month; (4) debris removal up to $50,000; and (5) damage to landscape up to $25,000. Falby Ans. ¶ 16.

On August 14, 2019, Jensen pleaded guilty and was convicted of first-degree arson for burning the Residence. Reiner Decl. Ex. 6.

On September 3, 2019, Jensen's attorney indicated his willingness to participate in an EUO and deposition. Reiner Decl. Ex. 7. Jensen submitted to an EUO on September 27, 2019. Reiner Decl. ¶ 8; Ex. In his EUO, Jensen testified that he set the fires at the Residence to hurt Falby and not for insurance benefits. Taylor Decl. ¶ 10.

State Farm informed Falby that it intended to extend coverage and make a payment for the actual cash value ("ACV") of the Residence under Coverage A to

Falby and Falby's mortgagor.  State Farm also agreed to pay 50% of remaining replacement cost value ("RCV") benefits pursuant to the terms and conditions of the Policy.  Falby's mortgage has previously been held by Wells Fargo, but the parties had learned that Wells Fargo sold the mortgage to Specialized Loan Servicing, LLC ("SLS") and neither Falby, nor State Farm knew whether the ACV payment should be made to Wells Fargo or to SLS.

State Farm also agreed to pay Falby's claim for personal property under Coverage B.  For personal property loss under Coverage B, State Farm requested that Falby submit his contents claim.  Reiner Decl. Ex. 8.

On December 23, 2019, State Farm contacted Falby's attorney to ask for Falby's contents inventory under Coverage B and for any signed contract for rebuilding the Residence for purposes of an RCV payment under Coverage A.  Reiner Decl. Ex. 12.  In response, Falby's public adjustor sent a copy of a contract between Falby and a contractor with a repair estimate, which made structure claims of $320,158.15 in ACV and $556,420.18 in RCV for the Residence.  Reiner Decl. Ex. 13, at 68.

On January 2, 2020, State Farm contacted Wells Fargo's attorney to ask whether Wells Fargo was the real party in interest as the mortgage-holder for purposes of Coverage A.  Reiner Decl. Ex. 14.

On January 9, 2020, State Farm contacted Falby's attorney with an updated estimate for Coverage A and to ask for a contents inventory for purposes of Coverage B.  Reiner Decl. Ex. 15.  The email also notified Falby's attorney that the restitution

deadline had been extended  State Farm also informed Falby's attorney that State Farm was awaiting a response from Wells Fargo about the proper party as mortgage-holder.  *Id.*

On January 16, 2020, Wells Fargo filed an Answer to State Farm's Complaint, in which it admitted that Wells Fargo was the named mortgage-holder under the Policy but denied that it was the real party in interest.  ECF No. 37.  The parties continued to dispute the correct identity of the mortgage-holder until Wells Fargo filed a motion for summary judgment on February 14, 2020 in which it asserted that SLS was the holder of the mortgage and that Wells Fargo was not the real party in interest.  ECF No. 42.

On February 14, 2020, State Farm issued a payment of $309,000.61 for ACV under Coverage A made payable to Falby and SLS and State Farm issued a payment of $98,258.73 for RCV under Coverage A to Falby, care of Falby's attorney.  Reiner Decl. Ex. 18.

On April 15, 2020, State Farm stipulated to the dismissal of its claims against Falby, Jensen, and Wells Fargo, leaving only Falby's counterclaims against State Farm.  ECF No. 48.

On May 4, 2020, Falby submitted a contents list for Coverage B to State Farm, seeking ACV in the amount of $248,905.19.  Reiner Decl. Ex. 22.  State Farm took Falby's deposition on August 11, 2020.  Reiner Decl. Ex. 25.

On October 16, 2020, State Farm issued an ACV payment of $248,905.19 to Falby, care of Falby's attorney, for personal property under Coverage B.  Reiner Decl. Ex. 24.

On December 18, 2020, State Farm sent a letter to Jensen informing him that they were denying his claim because the "investigation determined you intentionally set fire to the described residence" and so the "loss was not an accidental direct physical loss to the described residence."  Reiner Decl. Ex. 9, at 1.

## DISCUSSION

In its Motion for Summary Judgment, State Farm contends that (1) Falby is not entitled to more than 50% of the total value of the loss under Coverage A and that Falby has received more than 50% of the total value of the loss; (2) Falby is not entitled to any additional payment for personal property under Coverage B; and (3) Falby has received the maximum amount of ALE coverage called for by Coverage C. As noted, there is no dispute that Falby received the all benefits required under Coverage C of the Policy.

In his Motion for Partial Summary Judgment, Falby contends that there is no dispute that State Farm breached the Policy and that only damages, costs, and attorney fees remain to be determined.

## I.    Jensen is Not Entitled to Recover Under the Policy

As a preliminary matter, the Court must resolve whether Jensen is entitled to recover under the Policy.  In his Response to State Farm's Motion for Summary Judgment, Falby argues that the Policy does not exclude losses caused by the

intentional act of the insured per se and that only Jensen's failure to present a claim, and not his deliberate destruction of the Residence, serves to bar his recovery under the Policy.

The Policy provides that State Farm will "insure for *accidental direct physical loss* to the property described in Coverage A," except as provided by the exclusions. Reiner Decl. Ex. 1, at 11 (emphasis added).  Plaintiff asserts that this limitation conflicts with the requirements of Oregon statutes.

Policy exclusions are unenforceable if they attempt to eliminate coverage required by statute.  *Dowdy v. Allstate Ins. Co.*, 68 Or. App. 709, 716-17 (1984). Courts will construe policies as if they do not contain the non-compliant clauses as "the most appropriate way to bring the policy into compliance with the Insurance Code." *Fleming v. United Servs. Auto Ass'n*, 329 Or. 449, 459-60 (1999).

ORS 742.202 provides that all fire insurance policies contain the provisions set forth in ORS 742.206 to 742.242.  ORS 742.206 requires that all fire insurance policies contain the following provision:

> In consideration of the provisions and stipulations herein or added hereto . . . this company . . . does insure . . . to the extent of the actual cash value of the property at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, *nor in any event for more than the interest of the insured*, *against all direct loss by fire*, lightning, and by removal from premises endangered by the perils insured against in this policy, except as hereinafter provided, to the property described hereinafter . . .

ORS 742.206 (emphasis added).

Falby asserts that the language of the Policy limiting coverage to "accidental" physical loss is in conflict with the ORS 742.206 requirement that fire insurance policies cover "all" direct loss by fire. Falby contends that the Policy should therefore be construed as consistent with ORS 742.206, with the result that Jensen would not be excluded from coverage.

This argument is not supported by the statutory context of ORS 742.206.[2]  In ORS 731.102, the term "insurance," which is used repeatedly in ORS 742.206, is defined as "a contract whereby one undertakes to indemnify another or pay or allow a specified or ascertainable amount or benefit upon determinable risk contingencies." ORS 731.102(1). The definition of "insurance" as covering "determinable risk contingencies," cannot reasonably be stretched to include the insured deciding to deliberately destroy the insured property.

This is supported by limitations included in the other Oregon fire insurance statutes. For example, insurance companies are to exclude liability for losses caused by the "neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises." ORS 742.212(i). As State Farm points out, such a statutory exclusion for a loss caused by a negligent act cannot be squared with Falby's argument that State Farm must provide coverage for an intentional burning of the property by an insured. Fire insurance policies are also permitted by statute to exclude a loss occurring "[w]hile the hazard is increased by any means within the control or knowledge of the

---

[2] Courts consider the "text and context" of a statute when interpreting the statute's meaning. *State v. Gaines*, 346 Or. 160, 171-72 (2009) (en banc).

insured." ORS 742.216(1). This is likewise inconsistent with the argument that ORS 742.206 requires coverage for acts of arson by the insured.

In addition, the Oregon Supreme Court has, for over a century, recognized that there is a sound public policy reason to forbid arsonists from recovering insurance benefits occasioned by their crimes:

> It cannot be that one of the risks covered by a contract of insurance is the crime of the insured. There is an implied obligation on his part to do nothing to wrongfully accelerate the maturity of the policy. Public policy forbids the insertion in a contract of a condition which would tend to induce crime, and as it forbids the introduction of such a stipulation it also forbids the enforcement of a contract under circumstances which cannot be lawfully stipulated for.

*Smith v. Germania Fire Ins. Co. of New York*, 102 Or. 569, 574 (1922) (internal quotation marks and citation omitted).

Consistent with that guidance, the Court concludes that Jensen is barred by public policy and by the terms of the Policy itself from recovering insurance benefits arising from his deliberate destruction of the Residence.

The Court notes that the Policy also contains an exclusion for losses caused by the intentional act of the insured:

> If you or any person insured under this policy caused or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other insured for this loss.

Reiner Decl. Ex. 1, at 19.

Falby agrees that Jensen caused an intentional loss by burning the Residence, but disputes whether Jensen did so for the purpose of gaining insurance benefits under the Policy. In his EUO, Jensen "consistently testified that his motivation for

starting the fires was to exact retribution for what he believed to be hurtful actions" by Falby and "further testified that recovering insurance benefits did not play any role in his decision to set the fires." Thede Decl. ¶ 6. ECF No. 75. It is not necessary for the Court to resolve Jensen's specific motivation in destroying the Residence because State Farm has not invoked this provision to void the Policy as to Falby and, for the reasons discussed above, Jensen is otherwise barred from recovering under the Policy.

## II.    Falby's Interest in the Residence

The next issue the Court must resolve is the extent of Falby's interest in the Residence. In the section of the Policy labeled "Conditions," the Policy provides:

> 1. **Insured Interest and Limit of Liability.**  Even if more than one person has an insurable interest in the property covered, we shall not be liable:
> a. to the **insured** for an amount greater than the **insured's** interest; or
> b. for more than the applicable limit of liability.

Reiner Decl. Ex. 1, at 17.

In addition to the Policy, ORS 742.206 also provides that coverage under the policy should not be "in any event for more than the interest of the insured." ORS 742.206,

State Farm contends that Falby holds a 50% interest in the Residence. Falby in turn asserts that he and Jensen share the entire 100% ownership interest. Falby argues that Jensen is not excluded from coverage and that because Falby is the only party seeking coverage, he is entitled to recover his shared ownership interest of 100%. Falby Resp. at 17. ERCF No. 72. For the reasons discussed in the previous

section, the Court concludes that Jensen in excluded from coverage under the Policy and so only Falby's interest in the Residence is at issue.

For purposes of Coverage A, Falby's public adjuster assessed the ACV of the Residence as $464,542.43 and the RCV as $556,526.71. Taylor Decl. Ex. 6, at 64. ECF No. 67. State Farm has paid Falby $407,259.34 under Coverage A. Reiner Decl. Ex. 18. If Falby's interest in the Residence is 50%, as State Farm contends, then State Farm has more than satisfied its obligations under the Policy because the amount disbursed is more than 50% of the RCV identified by Falby for Coverage A. But if Falby's interest is 100%, then State Farm has not yet paid the ACV or RVC on the Residence under Coverage A.

The Court must therefore resolve the scope of Falby's interest in the Residence. "In ordinary parlance, an 'interest' refers to a right, title, or legal share in something in which one has a share of ownership or control," and "[a]s the term is ordinarily used, therefore, an 'interest' is inherently broad, denoting not merely an ownership relationship but any legal share or right of control." *Tualatin Valley Housing Partners v. Truck Ins. Exch.*, 208 Or. App. 155, 160 (2006) (internal quotation marks and citation omitted).

The Oregon Supreme Court has held that "if the insured has an insurable but only a qualified, partial, or limited interest in the property insured against fire, he may not recover the full value or an amount exceeding his actual interest in the res." *Transp. Equip. Rentals, Inc. v. Oregon Auto. Ins. Co.*, 257 Or. 288, 301 (1970) (internal quotation marks and citation omitted). The "general rule is that the insured is

limited in recovery to the value of his actual interest in the property insured." *Id.* (internal quotation marks and citation omitted); *see also Uptown Market, LLC v. Ohio Sec. Ins. Co.*, 286 F. Supp.3d 1160, 1166 (D. Or. 2018) ("In addition to having an insurable interest, the insured must suffer an actual loss. Any recovery is limited to the actual loss sustained.").

In *Fleming v. United Servs. Auto Ass'n*, 169 Or. App. 371 (2000), the plaintiff and his wife owned a 55% interest in an insured premises. *Id.* at 373. The plaintiff and his wife were the only named insured under the policy and sought to recover benefits on a claim that the property had been damaged by their tenant's use of the house as a methamphetamine laboratory. *Id.* The policy in *Fleming* included a provision substantively identical to the condition in the Policy in the present case limiting liability to the insured's interest in the covered property. *Id.* at 374. The insurer moved for a partial directed verdict, arguing that because the plaintiff's interest in the house was limited to 55%, "any recovery should be limited to 55 percent of the damages found proven by the jury." *Id.* at 373 (internal quotation marks omitted, alterations normalized).

In *Fleming*, the Oregon Court of Appeals rejected the insurer's contention that the plaintiff was entitled to recover only the percentage of the actual covered damages equal to the percentage of his ownership interest in the property. *Fleming*, 169 Or. App. at 374. The court held that the "an insured may not recover damages that exceed the insured's interest in the damaged property," but that an insured's recovery is not

limited "to a share of the actual damages that is proportional to the insured's interest in the property." *Id.* The court observed:

> Notwithstanding that the contractual and judicial language on which defendant relies is to the contrary, it could still be argued that there is some logic to the principle that defendant posits. Be that as it may, that logic can arguably extend—at the farthest—only to the structural or other damages to the property itself, as to which there is some correlation between the amount of the insured's interest and the amount of his loss.

*Fleming*, 169 Or. App. at 374-75.

The Court of Appeals also noted that, in the case of the *Fleming* plaintiff, the coverage sought went far beyond damage to the structure and included coverage for cleanup costs and lost rent and that "[t]here is no automatic connection between the value of plaintiff's share of the property and the share of those losses that he may have sustained." *Fleming*, 169 Or. App. at 375.

Here, State Farm seeks to apply the reasoning of *Fleming* to limit Falby's recovery under Coverage A, which is concerned with damage to the structure of the Residence, and not to the other forms of coverage under the Policy. This argument does not run afoul of the holding of *Fleming*. The Court concludes that, considering the language of the Policy, of ORS 742.206, and *Transp. Equip. Rentals, Inc.*, Falby is limited to recovering benefits under Coverage A equal to the percentage of his interest in the property. For reasons previously discussed, Jensen is barred from recovering under the Policy. Thus, it is necessary to determine Falby's interest in the Residence.

As noted, Falby and Jensen took the Residence, "not as tenants in common but with rights of survivorship." Reiner Decl. Ex. 23, at 1. In Oregon, a conveyance of real property made to two or more persons with a declaration of rights of survivorship "creates a tenancy in common in the life estate with cross-contingent remainders in the fee simple." ORS 93.180(2). This is known in Oregon as an "*Erickson* deed." *In re Domestic P'ship of Branam and Beaver*, 225 Or. App. 630, 638 (2009) (citing *Erickson v. Erickson*, 167 Or. 1 (1941)). "Such an interest is divisible, in that it may be partitioned and sold, even though neither co-owner can force the sale of the estate in fee simple before the other dies." *Church v. Woods*, 190 Or. App. 112, 117 (2003).

Falby and Jensen were not married at the time they purchased the Residence, although they did subsequently marry. Although much of the case law on this issue concerns disposition of jointly-owned real property following the dissolution of a non-marital relationship, the default presumption is generally that each partner is entitled to an equal interest in the property. *See Brandt v. Brandt*, 215 Or. 423, 451 (1958) (in a case where the parties believed incorrectly but in good faith that they were married, that the proper partition of the property was according to equal half interests); *Beal v. Beal*, 282 Or. 115, 121-23 (1978) ("Using the rules of cotenancy, when the conveyance is taken in both names the parties would be presumed to share equally, or to share based upon the amount contributed, if the contributions were traceable," but establishing a rule for distribution of property from nonmarital domestic relationships "based upon the express or implied intent of those parties."); *Brazell v. Meyer*, 42 Or. App. 179, 184-85 (1979) (when unmarried parties held

property together, "lived together in the residence and, at least at the relevant times, held themselves out as husband and wife," there was a rebuttable inference that each was entitled to an equal share upon partition). Although this is not a case for the partition of jointly held property, or for the division of the proceeds of a sale, *Brandt*, *Beal*, and *Brazell* together support the conclusion that, in the absence of a more express division, Falby and Jensen each held an equal 50% interest in the Residence.

In sum, because Jensen is not entitled to recover anything under the Policy, Falby is entitled to recover insurance benefits under Coverage A equal to his interest in the Residence and that interest is 50%.

Accepting Falby's figures, the RCV for the Residence under Coverage A is $556,526.71 and the ACV is $464,542.43. Taylor Decl. Ex. 6, at 64. State Farm has paid $407,259.34 under Coverage A. Because this sum exceeds Falby's 50% interest, using Falby's RCV figures, Falby is not entitled to recover additional payment under Coverage A of the Policy. The Court concludes that State Farm is entitled to summary judgment as to Falby's counterclaim for breach of contract as to Coverage A.

### III.    ACV and RCV under Coverage B

As discussed above, the Policy provides that State Farm will provide ACV for losses to the structure under Coverage A, Reiner Decl. Ex. 1, at 15, and for losses to personal property under Coverage B, *Id.* at 16, until the repair or replacement is completed, at which point, State Farm will pay the difference between the ACV and RCV. To receive the difference between the ACV and RCV, the insured must complete

the repair and replacement within two years after the date of loss.  Reiner Decl. Ex. 1, at 15-16.   As discussed in the previous section, State Farm is entitled to summary judgment as to Coverage A and so the Court confines itself the issue of personal property under Coverage B.

The loss in this case occurred on August 1 and 2, 2018 when Jensen burned the Residence.  State Farm denied coverage under the Policy until Jensen submitted to an EUO in September 2019.  After repeated requests from State Farm, Falby submitted a contents list for Coverage B to State Farm on May 4, 2020, seeking ACV for personal property in the amount of $248,905.19.  Reiner Decl. Ex. 22, at 273.  State Farm took Falby's deposition on August 11, 2020.  Reiner Decl. Ex. 25.  On October 16, 2020, State Farm issued an ACV payment of $248,905.19 under Coverage B, representing the full amount sought by Falby.  Reiner Decl. Ex. 24.   Falby has not submitted a request for RCV payments under Coverage B.

"Replacement Cost insurance . . . is any type of coverage under which the insurance company agrees . . . to pay the difference between actual cash value and full replacement cost."  *Higgins v. Ins. Co. of N. Am.*, 256 Or. 151, 163 (1970). Recovery for RCV is conditioned on the actual repair or replacement of the lost property. *Patton v. Mut. of Enumclaw Ins. Co.*, 266 Or. App. 154, 168 (2014); *see also MLM Prop. LLC v. Country Cas. Ins. Co.*, No. CV 06-3048-CL, 2010 WL 678149, at *8 (D. Or. Feb. 25, 2010) (the "basic limitation" of replacement cost insurance "is that the insured collects on this new for old basis only if the property is repaired or replaced." (internal quotation marks and citation omitted).

> Repair or replacement is prerequisite to recovery under the extension. The insured can submit a claim for actual cash value when he chooses and collect any additional amount he may have coming under the replacement cost extension. When the property is not repaired or replaced, the insured receives actual cash value.
>
> There may be restrictions on the length of time allowed for Plaintiffs to repair and replace: it is usual to provide that repairs or replacements shall be completed with due diligence and dispatch, ordinarily within 12 months.  If the contract does not set forth a time period to replace, the law will imply a requirement that it be done within a reasonable time.

*MLM Prop. LLC*, 2010 WL 678149, at *8 (internal quotation marks and citations omitted, alterations normalized).

"The reasons for limiting recovery to the amount actually expended for repair or replacement seem reasonable, and such a limitation should be enforced if it is clearly stated in the insurance contract." *Higgins*, 256 Or. at 166.  In *Higgins*, the Oregon Supreme Court concluded "that since plaintiffs have not expended anything in repairing or replacing the insured building they are not eligible to recover under the 'Replacement Cost' extensions of the policy."  *Id.*

As noted, the Policy in this case provides that to receive the difference between the ACV and RCV, the insured must undertake the replacement within two years of the loss.  Falby has not submitted an accounting of replacement costs to State Farm and does not assert that he has undertaken to replace the contents of the Residence, despite State Farm extending the time for seeking RCV benefits for a year after the payment of ACV under Coverage B, which occurred on October 16, 2020.  State Farm Reply Br. at 16.  ECF No. 82.  Under the terms of the Policy, the time for seeking

RCV benefits has elapsed and State Farm is not obliged to make any further payments under Coverage B.

Falby asserts that that the time for undertaking to replace the contents of the Residence should be tolled under the doctrine of prevention, arguing that the conduct of State Farm prevented Falby from undertaking replacement of the lost property.

"[W]here the conduct of the defendant has prevented the performance of a contract provision by the plaintiff," the plaintiff is excused from performing under that provision. *Anderson v. Allison*, 256 Or. 116, 121 (1970). "In general, 'whether interference by one party to a contract amounts to prevention so as to excuse performance by the other party is a question of fact to be decided by the jury under all of the proved facts and circumstances." *Fitzgerald v. Am. Family Mut. Ins. Co.*, Case No. 6:14-cv-497-AA, 2015 WL 5896139, at *6 (D. Or. Oct. 6, 2015) (quoting 13 Williston on Contracts § 39:3 (4th ed.) (alterations normalized). "But when an insurer denies coverage and refuses to pay an actual cash value settlement, some courts have held the insurer's action prevented the insured from complying with the replacement cost provisions of the contract as a matter of law." *Id.* (collecting cases).

In *Fitzgerald*, this Court denied summary judgment where the defendant insurer undervalued the insured's personal property losses by 27%. *Fitzgerald*, 2015 WL 5896139, at *6. The insured alleged that this undervaluation "reduced the funds they had available to replace damaged items within the replacement coverage period, this preventing them from replacing as much of their damaged personal property as they would have replaced had they been paid immediately the full actual cash value

of their losses." *Id.*  The Court concluded that it could not be determined as a matter of law whether the undervaluation amounted to prevention.  *Id.*

In this case, by contrast, the delay in the payment of ACV benefits under Coverage B is attributable first to Jensen's refusal to participate in an EUO, which was a condition precedent to coverage, and then to Falby's own delay in submitting a list of the contents of Residence, despite repeated requests from State Farm.  Once Falby submitted a list of the contents, State Farm paid the full requested amount within six months and then extended the time for Falby to undertake replacement. Unlike *Fitzgerald*, the delay in payment of ACV benefits for Coverage B is not attributable to the actions of the insurer and it would not be equitable to penalize State Farm for Falby's own delay in submitting the contents of the property.  The Court therefore concludes that the doctrine of prevention does not apply and further concludes that State Farm is entitled to summary judgment on this issue.

## IV.    Attorney Fees

Falby seeks to recover attorney fees based on mid-litigation payments tendered by State Farm.  With respect to attorney fees in insurance coverage disputes, Oregon law provides, in relevant part that

> [I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

ORS 742.061(1).

Of note, ORS 742.061 does not require that the insured prevail on a claim for breach of contract, but only that they show (1) that settlement was not made within six months of the proof of loss; (2) that an action is brought upon the policy; and (3) that the plaintiff recovers more than the tender made by the defendant.  This is consistent with the purpose of the statute, which "seeks to protect *insureds* from the necessity of litigating their valid claims," but which "has no converse purpose of protecting *insurers* from litigation."  *Dockins v. State Farm Ins. Co.*, 329 Or. 20, 29 (1999).

In this case, State Farm agrees that it initially made no tender because Jensen had not submitted to an EUO as required by the Policy and further agrees that it subsequently made mid-litigation payments to Falby under both Coverage A and Coverage B of the Policy.

With respect to Coverage B, State Farm asserts that the mid-litigation payment of the ACV was made within six months of receiving the contents list from Falby, which constituted the proof of loss, and so no attorney fees are warranted. Falby contends that the initial notice that the Residence had been destroyed served as the proof of loss and triggered the running of the six month period under ORS 742.061.

The statute does not define proof of loss and so Oregon courts have supplied the defect by the familiar system of statutory construction.  *Zimmerman v. Allstate Prop. and Cas. Ins. Co.*, 354 Or. 271, 279 (2013).  The Oregon Supreme Court has defined "proof of loss" for purposes of ORS 742.061 as "[a]ny event or submission that

would permit an insurer to estimate its obligations (taking into account the insurer's obligation to investigate and clarify uncertain claims) qualifies as a 'proof of loss' for purposes of the statute." *Scott v. State Farm Mut. Auto Ins. Co.*, 345 Or. 146, 155-56 (2008).

"Ordinarily, what is sufficient to constitute a proof of loss under a policy depends on the type of insurance at issue," but "a common thread in all cases is the sufficiency of information to constitute a proof of loss is evaluated in terms of the purpose of the requirement: to enable the insurer to estimate its rights and liabilities under the policy." *Zimmerman*, 354 Or. at 280. In Oregon, courts follow a "pragmatic and functional, as opposed to strict and formalistic, approach in defining the term 'proof of loss.'" *Id.* at 281. "Substantial, as distinguished from strict, compliance of the proof of loss requirement is all that is required." *Sutton v. Fire Ins. Exch.*, 265 Or. 322, 325 (1973).

> The test of whether the insured substantially complied with the proof of loss requirement should be whether the proof submitted by the insured fulfilled the purpose of the proof of loss:
>
> The purpose of a provision for proof of loss is to afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form [an] intelligent estimate of its rights and liabilities before it is obliged to pay. Its object is to furnish the insurer with the particulars of the loss and all data necessary to determine its liability and the amount thereof.

*Sutton*, 265 Or. at 325 (internal quotation marks and citation omitted).

In this case, the purposes of a "proof of loss" for Coverage B were not satisfied by Falby's initial notice to State Farm that the Residence had been destroyed by fire. There was nothing in that notice that would allow State Farm to estimate its

obligations under Coverage B, even considering State Farm's obligation to investigate and clarify.

Falby did not substantially comply with the proof of loss obligations for Coverage B until he submitted the inventory of contents to State Farm on May 4, 2020. Even had State Farm been willing to immediately pay the ACV for the contents of the Residence, it could not do so until Falby provided State Farm with an accounting of the contents. Without that information, State Farm was not able to "estimate its obligations," or "form an intelligent estimate of its rights and liabilities." No independent investigation by State Farm could have yielded a list of the contents of the Residence because that information was in the sole possession of the insured.[3] Of note, State Farm commenced an investigation and paid the full requested amount for ACV under Coverage within six months of receiving the contents list from Falby. On this record, the Court declines to award attorney fees under ORS 742.061 based on the mid-litigation payments under Coverage B because those payments were made within six months of Falby's substantial compliance with the proof of loss requirement.

With respect to Coverage A, Falby promptly notified State Farm of the property's destruction. However, an EUO by the insured, both Jensen and Falby, was a condition precedent to coverage. State Farm asserts that the lack of an EUO from Jensen should serve to toll the six-month period established in ORS 742.061

---

[3] Jensen had been barred from the Residence by a restraining order prior to his destruction of the property and so the only person with complete knowledge of the contents of the Residence at the time of the loss was Falby.

and, with that period excluded, contends that payment was made within six months of the initial proof of loss.

As Falby correctly points out, however, there is no basis in the statute or in case law for tolling the period from the proof of loss under ORS 742.061 in the manner suggested by State Farm. State Farm relies on *Gore v. Prudential Ins. Co. of Am.*, 265 Or. 12 (1973), but the facts of that case are inapposite.

In *Gore*, there was a dispute between potential beneficiaries of a life insurance policy. *Gore*, 265 Or. at 13. The insurer "at no time denied that it was liable on the policy," but "it was uncertain to whom the proceeds belonged, and it was willing to deliver the proceeds to such person as the court might direct." *Id.* at 14. Pursuant to a court order, the insurance company paid the specified amount to be held by the court until the dispute was resolved by litigation. *Id.* The Oregon Supreme Court held that the insurer was not obliged to pay attorney fees to the eventual victor because "the statute was not intended to apply to any situation where an insurance company, as an innocent stakeholder, is willing to pay policy proceeds to whomever they might belong." *Id.* at 16. The court held: "It is our belief that the legislature did not intend, by the passage of the statute, to place the insurance company in a position where it either had to pay one claimant or the other, running the risk of double recovery, or was compelled to pay attorney fees, . . . It appears to us that the circumstances envisaged under the statute are those where the insurer is contending it has no liability." *Id.*

The Oregon Supreme Court later clarified the scope of its holding in *Gore* as applying to that "single circumstance," and that it "says nothing about the overall meaning of the statute in more ordinary circumstances, *i.e.*, when the claimant has a quarrel *with the insurer* about his or her right to payment under the policy." *Dockins*, 329 Or. at 34 (emphasis in original); *see also Douglass v. Allstate Ins. Co.*, 152 Or. App. 216, 221 (1998) ("Thus the defendant insurer in *Gore* effectively tendered the full amount of the policy and did not affirmatively dispute the plaintiff's entitlement to a complaint recovery, if the plaintiff was, in fact, the proper beneficiary. Nothing in *Gore* suggests that ORS 742.061 does not apply where the insurer does dispute the insured's entitlement to a complete recovery and the insured's ultimate recovery exceeds the insured's tender."). "As construed by this court, ORS 742.061, provides that plaintiffs are entitled to attorney fees if their recovery exceeds the amount of any timely tender made by defendant," or any recovery at all if the insurer does not make a timely tender. *Dockins*, 329 Or. at 34. In this case, State Farm did not make a timely tender, either to Falby or to the mortgage holder, and instead affirmatively disputed coverage and filed an action seeking declaratory relief. Consistent with *Dockins* and *Douglass*, the limited exception provided by *Gore* does not apply in this case.

With respect to Coverage A, State Farm received timely notice of the loss and disputed Falby's entitlement to recovery. State Farm made no timely tender. The eventual payment of the ACV under Coverage A was made more than six months

after the proof of loss.  Accordingly, the Court concludes that Falby is entitled to recover attorney fees under ORS 742.061(1).

**CONCLUSION**

For the reasons set forth above, State Farm's Motion for Summary Judgment, ECF No. 62, is GRANTED.  Falby's Motion for Partial Summary Judgment, ECF No. 64, is GRANTED as to the issue of attorney fees but otherwise DENIED.  Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ____23rd____ day of May, 2022.


 /s/Ann Aiken_____
Ann Aiken
United States District Judge